SMITH *against* PRINCE and another:

IN ERROR.

*A* conveyed certain articles of machinery to *B*, under an agreement between them, that *B* should pay for it the sum of 5000 dollars, of which 2000 dollars was to be paid on delivery of the machinery, and the residue in manufacturing cloth for *A*, at a certain price *per* yard. If *B* performed the agreement on his part, the machinery was to be absolutely his; but if he failed to do so, it was to revert to *A*, who, in that event, was to retain so much of the 2000 dollars paid by *B* as would indemnify *A* for the damages he might have sustained, by the depreciation of the machinery in value, or otherwise. *B*, upon the delivery of the machinery, paid *A* 2000 dollars, and commenced the manufacture of cloth for *A*, pursuant to the agreement. In this state of things, *B* mortgaged the machinery to *C*, to secure him for his indorsement of *B's* two notes at the bank, by a deed containing the usual covenants of warranty and seisin, duly executed, acknowledged and recorded. *A* and *B* then united

in a conveyance of the machinery to *D*, who undertook to pay *A* the balance of 2135 dollars due to him, and to satisfy all other liens on the property, including the mortgage to *C*. The creditors of *D* afterwards attached this machinery, and sold it on execution, subject to all incumbrances, to *E*. *C* was subjected on his indorsement of *B's* notes. On a bill of foreclosure brought by *C* against *E*, it was held, 1. that the agreement between *A* and *B* was not an executory agreement to convey the property after the terms were complied with, but, upon its delivery, an immediate title was vested in *B*, defeasable by a failure to perform the terms ; 2. that by the covenant in *B's* deed to *C*, *B* and all claiming under him with notice, were estopped from impugning the right of *C* ; 3. that by the record of the deed, all persons coming in by subsequent title had notice of its contents ; 4. that *E*, who bought the title of *D* subject to all incumbrances, was justly bound to redeem the incumbrance of *C*, or surrender the security : consequently, that *C* was entitled to a decree in his favour against *E*.

Where a mortgage is given as security for the indorsement of certain notes, the renewal of the paper, if the indorser remains liable and is ultimately compelled to pay the debt in consequence of his original indorsement, does not affect the lien created by the mortgage.

THIS was a bill for the foreclosure of mortgaged premises, brought by *Asa Prince* and *Augustus Ormsbee*. The following, are the material facts in the case.

On the 12th of *May*, 1837, *Isaac C. Stetson* and *Lewis R. Blake* entered into a contract with *Daniel Remington* and *Daniel R. Whitman*, by which the latter, among other things, agreed to furnish the former with a certain quantity of factory machinery, of the value of 5000 dollars; for which machinery, *Stetson* and *Blake* agreed to pay, on the delivery thereof, 2000 dollars, and the balance, by manufacturing cotton cloth for *Remington* and *Whitman*, at $3\frac{3}{4}$ cents *per* yard, they paying 3 cents, and crediting $\frac{3}{4}$ of a cent *per* yard, until the sum so credited should amount to such balance ; and when payment should be fully made in this manner, the machinery was to become absolutely the property of *Stetson* and *Blake ;* but if they should fail to fulfill the contract on their part, it was to revert to *Remington* and *Whitman*, and the 2000 dollars, or so much thereof as should be necessary to indemnify *Remington* and *Whitman* for all damages they might sustain thereby, in the diminished value of the machinery or otherwise, should be forfeited to them. In pursuance of this contract, *Remington* and *Whitman*, on the 12th of *May* 1837, delivered to *Stetson* and *Blake* factory machinery, of the value of 5000 dollars ; and upon such delivery, *Stetson* and *Blake* paid to *Remington* and *Whitman* the sum of

*Windham,*
*July, 1841.*

*Smith*
*v.*
*Prince.*

2000 dollars, and thereupon commenced manufacturing cloth with such machinery, at their mill in *Thompson.*

On the 25th of *May,* 1838, *Prince* and *Ormsbee,* the plaintiffs in this bill, by their contract in writing of that date, agreed to indorse the paper of *Stetson* and *Blake* at the *Thompson Bank,* for the period of one year from that time, for an amount not exceeding, at any one time, the sum of 800 dollars ; and thereupon the plaintiffs, in pursuance of such agreement, indorsed for *Stetson* and *Blake* two notes, payable at the *Thompson Bank,* one for the sum of 500 dollars, in three months, and the other for the sum of 300 dollars, in four months. *Stetson* and *Blake* were also, at that time, indebted to *Prince,* by their note, dated the 25th of *May,* 1838, for the sum of 150 dollars, payable in six months, with interest. To secure the plaintiffs for their liability as indorsers, and to secure to *Prince* the payment of said note of 150 dollars, *Stetson* and *Blake* thereupon executed to the plaintiffs, a mortgage deed, with covenants of warranty and seisin, by which they conveyed to the plaintiffs, all the articles of factory machinery before-mentioned ; which were then the absolute property of *Stetson* and *Blake.* The condition of the mortgage was, that if *Stetson* and *Blake* should fully indemnify and save harmless the plaintiffs, for and on account of their indorsement of said two notes, and also such other indorsements as they should thereafter make, in pursuance of said agreement to indorse, and should also pay said note of 150 dollars to said *Prince,* said deed should be void, but otherwise should remain in full force. This deed was executed, acknowledged, and recorded according to law. At the same time, *Stetson* and *Blake* notified the plaintiffs that their interest in said machinery was only such as they derived by virtue of their contract with *Remington* and *Whitman.*

On the 3rd of *December,* 1838, *Stetson* and *Blake,* having become embarrassed in their business, mortgaged all of said machinery to one *Bowen,* to secure a debt, which they owed him, of 800 dollars ; and about the same time, it was attached by *William Sigourney* and others, their creditors, on claims amounting to about 700 dollars. On the same day, an arrangement was made between *Remington* and *Whitman* and *Stetson* and *Blake,* of the one part, and *D. C. Remington & Co.* of the other part, by which the former conveyed all said

machinery to *D. C. Remington & Co.;* and they, on their part, agreed to pay *Remington* and *Whitman* the sum then due to them from *Stetson* and *Blake,* amounting to 2135 dollars, and also to pay the claims of said attaching creditors, the mortgage debt to *Bowen,* and also the claim of the plaintiffs against *Stetson* and *Blake,* secured by the first-mentioned mortgage, and the balance of the estimated value of the machinery, in cash. To secure to *Remington* and *Whitman* the fulfillment of this agreement, on their part, *D. C. Remington & Co.* then executed to *Remington* and *Whitman* a mortgage of the machinery. Afterwards, sundry creditors of *D. C. Remington & Co.* attached said machinery, which, on the 19th of *September,* 1839, was sold, by virtue of executions against *D. C. Remington & Co.,* (subject to all existing incumbrances) to *Elisha A. Smith,* one of the defendants, in whom is now vested the equity of redemption in said machinery.

The note of *Stetson* and *Blake* for 500 dollars, mentioned in the condition of the mortgage to the plaintiffs, was renewed at maturity, by another note of the same amount, with the same parties. It was then paid, by a note signed by the plaintiffs and indorsed by *Parley Jordan.* This renewal note fell due on the 8th of *January,* 1839, and was then again renewed for the full amount, by another note, signed by *D. C. Remington & Co.,* and indorsed by the plaintiffs. It was further renewed, from time to time, with the same parties, until the 5th of *July,* 1839, when having been reduced, by partial payments, all of which were made by *D. C. Remington & Co.,* to the sum of 250 dollars, that sum then remained due thereon. The note of *Stetson* and *Blake* for 300 dollars, mentioned in the condition of their mortgage to the plaintiffs, was also once renewed, with the same parties, and then from time to time, by notes signed by *D. C. Remington & Co.,* and indorsed by the plaintiffs, until the 5th of *July,* 1839, when the original debt had, by payments made at the several renewals, by *D. C. Remington & Co.,* been reduced to 200 dollars, which then remained due. Both these notes, *viz.* of 250 dollars and 200 dollars, were paid out of the proceeds of a note for 700 dollars, signed by *D. C. Remington & Co.* and indorsed by the plaintiffs, which was discounted at the *Thompson Bank.* This note, by reason of the insolvency of *D. C. Remington & Co.,* the plaintiffs were obliged to pay.

The note of *Stetson* and *Blake* to *Prince* for 150 dollars, mentioned in the condition of the mortgage to the plaintiffs, has never been paid.

*D. C. Remington & Co.*, in becoming parties to said note at the bank, and in making said partial payments, did so in pursuance of their agreement with *Remington* and *Whitman* and *Stetson* and *Blake*, to remove the then existing incumbrances from the machinery; and the plaintiffs, in indorsing said renewal notes, did so, relying upon the security furnished them, by their mortgage.

While said machinery was in the possession of *D. C. Remington & Co.*, they removed all said incumbrances therefrom, except that of the plaintiffs, and said sum of 2135 dollars, to secure the payment of which, they mortgaged said machinery to *Remington* and *Whitman,* on the 3rd of *December*, 1838, as before stated.

On these facts, the court passed a decree of foreclosure in favour of the plaintiffs; and *Smith*, one of the defendants, thereupon filed his motion in error, bringing the record before this court for revision.

*Larned* and *C. F. Cleveland*, in support of the motion, contended, 1. That at the time the plaintiffs obtained the mortgage on the machinery, the mortgagors had no title thereto, and of course, the mortgagees could obtain no lien, which attached specifically to the machinery.

2. That the mortgagors never afterwards acquired any title to the machinery.

3. That when the contract was abandoned, by *Stetson* and *Blake* and *Remington* and *Whitman*, and the machinery was by them sold to *D. C. Remington & Co.*, these purchasers acquired an absolute right of property, subject to no lien or claim whatever, except to *Remington* and *Whitman* on the new mortgage.

4. That the creditors of *D. C. Remington & Co.*, who purchased the property under an execution sale against them, acquired a complete title thereto, not affected by any lien of the plaintiffs.

5. That if there could have been any lien in favour of the plaintiffs, it was entirely removed, by the subsequent transactions.

*Strong*, contra, insisted, 1. That *Stetson* and *Blake*, when they executed their mortgage of the machinery to the plaintiffs, had an interest in it, which *a court of equity* will recognize and protect. That is sufficient for the purposes of this case.

2. That no act has been done by the plaintiffs to transfer their interest; nor has their lien been given up, or in any way destroyed.

3. That the condition of the mortgage has not been fulfilled. The debt to *Prince* has not been paid; and the plaintiffs have not been saved harmless from their indorsements. The substitution of new notes did not pay the original debt. *Olcott* v. *Rathbone*, 5 *Wend.* 490. *Higgins* v. *Packard* & al. 2 *Hall*, 547. *Porter* & al. v. *Talcott* & al. 1 *Cowen*, 359. *Raymond* v. *Merchant*, 3 *Cowen*, 147. *Cromwell* & al. v. *Lovett*, 1 *Hall*, 56. *Bill* v. *Porter*, 9 *Conn. Rep.* 23. [*Williams*, Ch. J. suggested, that this point had recently been decided, by this court, in *Pond* v. *Clarke* & al. (*ante*, 334.)]

SHERMAN, J. The first question in this case regards the title which the defendants in error acquired by the mortgage deed from *Stetson* and *Blake*, on the 25th of *May*, 1838. It is contended, that *Stetson* and *Blake* had no such title in that part of the property which they received from *Remington* and *Whitman*, as would enable them to pledge it for a debt.

The machinery in question was conveyed to *Stetson* and *Blake*, on the 12th of *May*, 1837, and it was, at the same time, stipulated, that they should pay for it the sum of 5000 dollars. Of this sum, 2000 dollars was to be paid on delivery, and the residue in manufacturing cloth for *Remington* and *Whitman*, who were to give credit for a specified proportion of the price of manufacture, towards the balance due. If *Stetson* and *Blake* performed the contract on their part, the machinery was to be absolutely theirs. If they failed to fulfil, the property was to revert to *Remington* and *Whitman*; who, in that event, were to retain so much of the 2000 dollars advanced, as would indemnify them for the depreciation of the property, and other damages they might sustain, by the non-performance of the contract. This was not an executory agreement *to convey* the property *after* the stipulated terms were fulfilled, but vested an immediate title upon

*Windham,*
*July, 1841.*

Smith
*v.*
Prince.

its delivery, defeasible by a failure to perform the terms. The right of *Stetson* and *Blake* differed little from that of a mortgagor. It was defeasible until the fulfilment of the stipulations, and then to become absolute.

Under these circumstances, while the contract was in force, and *Stetson* and *Blake* had an absolute right to perfect their title, they mortgaged the property to *Prince* and *Ormsbee*, the defendents in error. Had full payment been made to *Remington* and *Whitman*, in the manner prescribed by the agreement, the title of the defendants, as mortgagées, would have been perfected. The mortgage deed contains covenants in regard to the title, which estopped *Stetson* and *Blake*, and all claiming under them with notice, from impugning the right of these defendants. It was executed, acknowledged, and recorded, in the manner directed by the statute; and therefore, all persons coming in by subsequent title, were notified of its contents.

While matters were in this condition, on the 3rd day of *December*, 1838, *Remington* and *Whitman* united with *Stetson* and *Blake*, in a conveyance of the property, for the consideration of 4500 dollars, to *D. C. Remington & Co.*, who undertook to pay *Remington* and *Whitman* the balance of 2135 dollars, due to them—for which they gave a mortgage; and to satisfy all other liens on the property, including the mortgage of *Prince* and *Ormsbee*. The creditors of *D. C. Remington & Co.* afterwards attached the property, and on the 19th of *September*, 1839, sold it on execution, subject to all incumbrances, to *Elisha A. Smith*. He, therefore, has the ultimate equity of redemption, subject to the mortgage of *Prince* and *Ormsbee*, and the debt due *Remington* and *Whitman*. Their right to the property is precisely defined, by the mortgage which they have taken. All other incumbrances have been cancelled. The foreclosure and order for sale do not affect their interest. They make no complaint. The only plaintiff in error is *Elisha A. Smith*, who bought the title of *D. C. Remington & Co.*, expressly subject to the mortgage of the defendants in error, and is justly bound to redeem it, or surrender the security. As against them he has no title, except what is derived from *Stetson* and *Blake*, which is obviously subordinate to theirs.

It is further insisted, by the plaintiff in error, that the court

below erred, in allowing the sums paid by *Prince* and *Orms-bee* upon their indorsements, on the ground that the renewal of the paper discharged the lien upon the property. As this is not specified in the assignment of errors, it is not necessary that it be considered by the court. But the same point was presented in the case of *Pond* v. *Clarke* & al. (*ante*, 334.) at the last term of this court in the county of *New-Haven*, where we held, that the renewal of the paper, while the indorser remained liable, if he was ultimately compelled to pay it, in consequence of his first indorsement, did not affect his lien upon the mortgaged property.

We are of opinion that the judgment of the superior court be affirmed.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.