## PELEG B. CLARK *vs.* GEORGE M. HOUGHTON & another.

The rejection of evidence of the handwriting of a party to an instrument, after only one of two attesting witnesses has been called, when the other is present at the trial is no ground of exception.

In trover by the mortgagee of a chattel, the defendant, although he has not pleaded title in himself, may show that the mortgage was made without consideration, and that the mortgagor afterwards sold some of the mortgaged property with the knowledge of the plaintiff.

Evidence of an oral agreement of the mortgagor and mortgagee, immediately after the delivery of a mortgage of personal property, that the mortgagor shall retain the right to sell or exchange the property, is inadmissible to control the construction or effect of the mortgage.

In trover by the mortgagee of a chattel against one claiming under the mortgagor, conversations or acts of the mortgagor, treating the mortgage as subsisting, are not admissible in evidence against the defendant, unless brought home to him, even if he has not pleaded title in himself.

The execution of a mortgage of personal property of a partnership by one partner in his individual name passes no title.

After the only attesting witness to an instrument, who is within the Commonwealth, has been called, evidence of the handwriting of the parties is admissible; although the deposition of the other attesting witness has been taken, returned and filed under a commission by which the party now offering the evidence of handwriting had an opportunity to cross-examine.

Oral evidence is competent to show that a promissory note which conforms to the description in a mortgage in all respects except the year of the date was the note intended to be secured by the mortgage.

In trover by the mortgagee of a chattel, the plaintiff may give in evidence a prior mortgage assigned to him, to which his second mortgage is expressly made subject, although such prior mortgage does not specifically mention the chattel in controversy.

It is no objection to the admission of secondary evidence of a written paper, that the witness does not say that he recollects the whole, or the substance of the paper, if he testifies to its substance.

If the plaintiff in trover proves title in himself as mortgagee, evidence of a subsequent sale from the mortgagor to the defendant is immaterial, and its rejection no ground of exception.

ACTION OF TORT for the conversion of a horse. The answer denied the plaintiff's property and the conversion, and alleged that if the plaintiff ever had any right, title, claim or lien to the horse, he transferred, discharged, released or waived it before the commencement of the action.

At the trial in the court of common pleas, at October term 1855, before *Sanger*, J., the plaintiff claimed title to the horse under a mortgage of sundry horses, vehicles and harnesses to

him from Nathan Brickett, Asa Faxon and James M. Monroe, " stablers and copartners under the firm of Brickett & Faxon," purporting to be signed by each of the mortgagors, with a seal against each name, attested by J. B. Lawton and R. L. Hobbs and duly recorded.

The plaintiff, to prove the execution of the mortgage, called Lawton, who testified that, being at work in the stable where the stock was, he was called by some one, he did not know whom, into the stable office, and there attested the mortgage, but did not know that either of the mortgagors was then present. The plaintiff then called one Langmaid, and proposed to prove by him the signatures of the mortgagors from his knowledge of their handwriting. The defendants objected; and the court ruled that the plaintiff must first call Hobbs, the other attesting witness, or show some reason for not producing him. Hobbs, who then was and during the trial had been in the court room, was then called by the plaintiff, and testified that he was called into the stable office by the plaintiff, and there saw Monroe sign the mortgage; " that he did not see either of the other mortgagors sign it; that neither of them requested him to witness it, or acknowledged to him that they had signed it, and that he did not know that they were present at the time, though they might have been and he not have seen them."

The defendants, who claimed title under a sale from Monroe subsequent to the mortgage, were allowed, notwithstanding the plaintiff's objection that it was not admissible under the pleadings, to give evidence tending to show that the mortgage was made without consideration ; and that the mortgagors, after the execution of the mortgage, sold some of the mortgaged property with the knowledge of the plaintiff.

The mortgage contained a provision authorizing the mortgagee to take immediate possession in case the mortgagor should attempt to sell the property or any part thereof without his assent in writing. The defendants were allowed, the plaintiff objecting, to inquire of Hobbs, " Whether, immediately after the signing of the mortgage, anything was said by Monroe or the plaintiff to the other about selling the property ; " and

Hobbs testified that " Monroe said to the plaintiff, ' I have a perfect right to sell or swap horses,' and the plaintiff said, ' You have ; ' that this conversation occurred within fifteen minutes after the signing, and before the plaintiff and Monroe separated."

At the close of the plaintiff's evidence the defendants moved for a nonsuit, upon the ground that no proof had been offered of the execution of the mortgage, which would authorize a verdict for the plaintiff. But the court overruled the motion ; and instructed the jury " that, as to the proof of execution, other evidence might be considered in connection with the testimony of Lawton and Hobbs ; but that no conversation or acts of the mortgagors, treating it as a subsisting mortgage, would be evidence as against the defendants, unless brought home to them ; " " that after the execution and delivery of the mortgage, if they should find that it had been executed and delivered, its terms could be varied by a new parol agreement ; and if they should find that subsequently to the execution and delivery of the mortgage the plaintiff gave Monroe a general power to sell the mortgaged property without any permission in writing therefor from him, the subsequent sale by Monroe, under which the defendants claimed, would be valid, and would pass the property in the horse to the defendants ; " and " that the execution of the mortgage by Monroe alone would not convey to the mortgagee the property therein described."

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions, which were argued and decided at October term 1856.

*F. Hilliard,* for the plaintiff. 1. After calling one attesting witness, the plaintiff should have been allowed to prove the handwriting of the mortgagors.

2. The defendants should not have been allowed to offer evidence of the mortgagors' selling " some of the mortgagee's property " for the purpose of showing an authority to them to sell this horse.

3. The defendants should not have been allowed to show that the mortgage was made without consideration ; for by the plead-

ings they claimed no title to the horse; and as against them, the mortgage would be valid without consideration.

4. Parol evidence was not admissible that the plaintiff authorized Monroe to sell the mortgaged property after execution of the mortgage; and the instructions to the jury upon that point were erroneous. *Hanchet* v. *Birge*, 12 Met. 545. *Adams* v. *Wilson*, 12 Met. 142. *Underwood* v. *Simonds*, 12 Met. 279. *Warren* v. *Wheeler*, 8 Met. 97. *Ryan* v. *Hall*, 13 Met. 520. *St. Louis Perpetual Ins. Co.* v. *Homer*, 9 Met. 40, 41, & cases cited.

5. As the defendants did not plead title in themselves as purchasers, the judge erred in instructing the jury that " no conversation or acts of the mortgagors, treating it as a subsisting mortgage, would be evidence against the defendants, unless brought home to them."

6. The judge erred in instructing the jury that " the execution of the mortgage by Monroe alone would not convey title to the property" of the partnership. *Tapley* v. *Butterfield*, 1 Met. 515. *Deckard* v. *Case*, 5 Watts, 22. *Harrison* v. *Sterry*, 5 Cranch, 289. Collyer on Part. § 467. Story on Part. § 122.

*J. J. Clarke*, for the defendants.

Thomas, J. The verdict is set aside and a new trial granted in this case, because of the admission of the testimony of Hobbs, who was called as an attesting witness to the mortgage made by Monroe and others to the plaintiff, that immediately after the signature by Monroe and before the parties separated, Monroe said to the plaintiff, " I have a perfect right to sell or swap horses," (that is, the horses mortgaged,) and the plaintiff said, " You have." As evidence affecting the construction of the written contract, the testimony would be, it is plain, immaterial and incompetent. That was a question of law to be settled by the language of the contract itself. The mortgage, it is clear, confers no such power. As evidence to show an alteration of the written contract by parol, or a waiver of its provisions, it was incompetent, because it was contemporaneous with the written contract. It was not an alteration of the written contract by a subsequent new oral agreement between the par-

ties. It was a declaration of the parties as to the contract and its meaning and effect, which was inconsistent with the contract itself made at the time of its execution. The evidence did not therefore fall within the rule stated by the learned judge in his charge to the jury. The other exceptions are overruled.

*New trial in the court of common pleas.*

The new trial was had at September term 1858, before *Sanger*, J. The plaintiff called Lawton, one of the attesting witnesses, who testified that he signed his name to the mortgage in the office of the mortgagors' stable ; that he thought that he did not see either of the mortgagors sign, and could not say that either of the mortgagors saw him sign ; that the plaintiff, and Brickett and Monroe, two of the mortgagors, were present, but that he did not recollect that Faxon, the other mortgagor, was there. The plaintiff did not call Hobbs, the other attesting witness, but alleged and offered evidence tending to prove that he was out of the Commonwealth. The defendants had taken the deposition of Hobbs in the State of New York, by commission, under which the plaintiff had put cross-interrogatories, but none respecting the execution and delivery of the mortgage ; and that deposition was duly returned and filed and used by the defendants in the case. No evidence was offered of the handwriting of Hobbs. The plaintiff was then allowed by the court, against the defendants' objections, to call Faxon as a witness to the handwriting of himself and the other mortgagors, and, after Faxon had testified that he signed the mortgage and that the signatures of the other mortgagors were in their handwriting, to read the mortgage to the jury.

The mortgage was dated April 23d 1853, and purported to be given to secure promissory notes " bearing even date herewith." The plaintiff produced three notes, dated April 23d 1852, but conforming to the description in the mortgage in all other respects ; and offered oral evidence tending to prove that these were the notes intended to be secured by the mortgage. The defendants objected ; but the court admitted the evidence.

The mortgage described the property as subject to a former

mortgage to Charles L. Mathes ; and that mortgage, which did not specifically mention the horse in question, had been assigned by Mathes to the plaintiff for a valuable consideration, before this action was brought. The court, against the defendants' objection, permitted the plaintiff to give that mortgage in evidence.

The plaintiff, against the defendants' objection, was permitted to testify to the contents of a written paper executed and delivered by the defendants to him just before this action was brought, and for the admission of secondary evidence of which a proper foundation had been laid ; although he did not state that he recollected the whole, or the substance, of its contents ; and testified that " the substance of the paper was that the defendants should give up the horse to him in sixty days, or pay him for it."

The defendants, for the purpose of disproving the plaintiff's title, offered to prove that they were the owners of the horse at the time of the commencement of the action. But the court ruled that such evidence was not admissible under their answer.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions, which were argued at this term.

*Clarke*, for the defendants.

*J. M. Keith*, for the plaintiff.

BIGELOW, J. 1. The testimony of Faxon, one of the mortgagors, to the genuineness of his own signature and those of the other mortgagors, was, under the circumstances proved at the trial, clearly competent. One of the subscribing witnesses had already been called and testified. It was proved that the other was absent from the Commonwealth. This fact was sufficient reason for not producing his testimony, and rendered other evidence of the execution of the mortgage admissible. This point was distinctly adjudicated in *Valentine* v. *Piper*, 22 Pick. 90 Nor did it affect the competency of this evidence, that the adverse party had taken the evidence of the other subscribing witness by commission in another state, and that he had been cross-examined by the plaintiff's counsel under written interrogatories appended to the commission. A party is not bound to send original documents out of the Commonwealth to be proved by

subscribing witnesses. The risk that they may be lost, obliterated or mutilated in the course of transmission is one of the main reasons on which the exception to the rule dispensing with the testimony of attesting witnesses who are out of the State is founded.

2. It was competent to offer evidence to identify the notes produced with those which the mortgage was intended to secure. The rule of law is well settled, that when an instrument, which is offered to prove the subject matter described, differs in one or more particulars from the description, evidence is admissible to prove their identity, notwithstanding the discrepancy. Such evidence does not vary or alter the written contract, but only serves to identify and apply it to the subject matter to which it relates. *Johns* v. *Church*, 12 Pick. 557. *Hall* v. *Tufts*, 18 Pick. 455. *Pierce* v. *Parker*, 4 Met. 84. *Bourne* v. *Littlefield*, 29 Maine, 302.

3. The mortgage to Mathes was properly admitted. As the mortgage under which the plaintiff claimed title to the horse in controversy expressly referred to this prior mortgage, and was made subject to the lien or incumbrance thereby created, this mortgage in effect made part of the plaintiff's written title. Although apparently immaterial, it was not absolutely irrelevant, and its introduction could in no way have prejudiced the defendants' case.

4. We can see no objection to the competency of the oral evidence of the contents of the written paper which was lost or destroyed. It came within the ordinary rule by which secondary evidence is held to be admissible. The witness did not testify that he did not state the substance of the whole paper. If he omitted any essential part of it, it was competent for the other side to supply such omission by parol evidence.

5. The rejection of evidence that the defendants were owners of the horse at the time of the commencement of the action was immaterial to the real issue before the jury. The whole case turned on the validity of the plaintiff's mortgage, which was prior in point of time to any title set up by the defendants. This title the defendants did not seek to impeach by the evi-

dence which they offered of title in themselves at the date of the writ. The prior mortgage being established, the right of the plaintiff to recover could not be affected by any subsequent title acquired by the defendants. *Exceptions overruled.*