GUY CALDWELL, Appellant, v. HARVE W. SISSON, Respondent.

St. Louis Court of Appeals, October 1, 1910.

1. CHATTEL MORTGAGES: Substitution of Notes: Continuance of Lien: Intention of Parties: Jury Question in Law Cases. The taking of a new note in exchange for the original note secured by a chattel mortgage does not ordinarily discharge the mortgage, the continuance of the lien depending upon the intention of the parties; and this rule obtains both at law and in equity, the question of intention, in law cases, being for the jury.

2. ———: ———: ———: ———: Parol Evidence Admissible to Show Intention. Parol evidence is admissible to show that a note materially different from that described in a chattel mortgage was a renewal of the latter, and, in fact, secured by the mortgage.

3. ———: ———: ———: Rights of Mortagee's Assignee. Where a new note was sought to be substituted for an original chattel mortgage note, under an express agreement between the mortgagor and mortgagee that the mortgage lien should continue to exist, the benefit of such agreement inured to the mortgagee's assignee.

4. ———: Ownership of Mortgaged Property: Effect of Signing Mortgage and Note: Evidence. The fact that a wife signed a chattel mortgage with her husband, and also the notes secured thereby, and that the mortgage required any surplus

Caldwell v. Sisson.

arising from a sale of the property to be turned over to her, does not conclusively indicate her to be a joint owner of the property.

5. REPLEVIN: Undivided Interest: Plaintiff Must Have Entire Interest or Right of Possession. Replevin cannot be maintained for an undivided interest in chattels, as such interest is not susceptible of delivery without the whole, and the plaintiff must have an entire interest or a right to the entire and exclusive possession, or his action will fail.

6. CHATTEL MORTGAGES: Husband and Wife: Replevin. If a wife joined her husband in a mortgage of her separate chattels for his benefit and the lien continues against her, replevin will lie against the husband in possession, on default.

7. ———: Substitution of Notes: Continuance of Lien: Consent: Evidence. Where new notes were taken in exchange for the original ones secured by a chattel mortgage, it may be inferred from the fact one of the parties signed the original and the substituted notes that such person was present and consented to the continuation of the mortgage lien as a security for the substituted notes.

8. ———: ———: ———: Husband and Wife: Jury Question: The question whether a wife, who joined her husband in mortgaging chattels, was the sole or a joint owner thereof, and, if so, whether she consented to a continuation of the lien to secure the substituted notes, *held*, under the evidence, a question for the jury.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

*Pearson & Pearson* and *Tapley & Fitzgerrell* for appellant.

(1) There was no evidence whatever upon which to base the verdict; nothing to show that Clara B. Sisson owned or had any interest whatever in the horses replevied. (2) Caldwell had a right to bring this suit even though he had no financial interest in the note. Nicolay v. Fritschle, 40 Mo. 67; Block v. Dorman, 51

Mo. 31; Snider v. Express Co., 77 Mo. 523. Assignee of note may maintain action. Willison v. Smith, 52 Mo. App. 133; Barber v. Staub, 111 Mo. App. 57; Bank v. Totten, 94 Mo. App. 603. (3) A chattel mortgage is valid when given to indemnify one who has become security for the mortgagor and the same inures to the benefit of the holder at the maturity of the note. Cobbey on Chattel Mortgages, sec. 146. The mortgage is prima facie evidence of the debt. Cobbey on Chattel Mortgages, sec. 132.

*Thos. B. McGinnis, Elliott W. Major* for respondent.

(1) One who is not the sole owner of chattels cannot sue in replevin to recover possession of such property. All of the owners must be joined in the suit. If another has a joint interest the action cannot be maintained. The plaintiff must have the right to the immediate exclusive possession, else he cannot invoke such remedy. McCabe v. Transportation Co., 131 Mo. App. 534; Steckman v. Bank, 126 Mo. App. 668; Upham v. Allen, 73 Mo. App. 224; Bryant v. Dyer, 96 Mo. App. 455.

NORTONI, J.—This is an action in replevin. The court instructed a verdict for defendant and plaintiff prosecutes the appeal.

It appears that on March 28, 1905, defendant and his wife, Clara B. Sisson, executed a chattel mortgage upon the several horses, sued for in this action, to secure the payment of a promissory note for three hundred and fifteen dollars to Henry Sisson and Webster Sisson. The condition of the mortgage was such that if the makers thereof should pay to Henry Sisson and Webster Sisson their certain promissory note described as of even date therewith, for the amount of three hundred and fifteen dollars, due one day after date, together with

six per cent. interest thereon, then the mortgage was to be void and of no effect, otherwise it was to remain a valid and enforceable instrument. Among other things, the mortgage stipulates that if the note described was not paid when due, the mortgagees might take possession of the several horses mentioned therein and sell the same at public vendue, after due advertisement, etc., the proceeds to be credited, of course, on the indebtedness secured and any balance after paying the costs and expenses incident to the foreclosure and liquidating the debt to be paid over to defendant's wife, Clara B. Sisson.

It appears from the uncontradicted proof that on May 5, 1905, defendant Harve Sisson, mortgagor, paid to Webster Sisson for himself and Henry Sisson, the mortgagees, the sum of eighteen dollars on the note or indebtedness therein described. This payment of eighteen dollars reduced the indebtedness mentioned to three hundred dollars. Instead of crediting this payment of eighteen dollars on the original note, defendant Harve Sisson, one of the mortgagors, drew up a new note as of that date, May 5, 1905, for three hundred dollars, the amount of the debt remaining unpaid, in favor of Henry and Webster Sisson, and delivered the same to them. Upon receiving the new note for three hundred dollars, Webster Sisson surrendered to Harve Sisson, the mortgagor, the original note of three hundred and fifteen dollars with an understanding, as the evidence shows, that the lien of the mortgage should remain intact to the end of securing the amount evidenced by the renewal note. About a week after this occurrence, Webster Sisson reported the same to his brother, Henry, one of the mortgagees, who objected to it, and requested that Harve Sisson should either surrender the old note or make a new one for three hundred and fifteen dollars as of date March 28, 1905, so as to conform in all respects to the note originally described in the mortgage, the payment of eighteen dollars to be

credited thereon. Webster Sisson immediately communicated this request to Harve Sisson and thereupon Harve Sisson and his wife Clara B., having destroyed the original note, executed a new one, identical in date, amount and in all other respects with that originally given and described in the mortgage. The three hundred dollar note was then surrendered to Harve Sisson and it was agreed between defendant Harve Sisson and the mortgagees that the lien of the mortgage should continue to exist on the horses as a security for the three hundred and fifteen dollar note so substituted for the original. Afterwards, the substituted note and mortgage were duly assigned to the present plaintiff. Default in the payment of the note having been made after demand, this suit was instituted in replevin to the end of acquiring possession of the horses described in the mortgage. The suit proceeds against defendant Harve Sisson alone; his wife, Clara B. Sisson, who signed the mortgage and all of the notes with him, is not a party hereto and there is no direct proof in the record that she has any interest in the property mortgaged, though such may possibly be inferred from the fact that she joined in executing the mortgage, and that it recites that any surplus of the funds after sale and liquidation of the indebtedness should be turned over to her.

We are not advised upon what theory the court directed a verdict for defendant, but the ruling is sought to be sustained here on two grounds, which will be noticed in their turn. It is first argued that plaintiff cannot maintain this action for the reason it appears the original note described in the mortgage had been taken up and destroyed and the indebtedness therein, together with the lien of the mortgage, was extinguished by the payment of eighteen dollars and the execution of the new note for three hundred dollars. This argument is unsound, for the evidence is uncontradicted to the effect that though there was a substitution of notes, the original indebtedness, less the amount of eighteen dollars

paid thereon, was to continue to exist and the lien of the mortgage should remain intact as a security therefor. It seems to be the accepted law, as stated by Mr. Jones in his work on Mortgages (5 Ed.), sec. 643, that the taking of a new note in exchange for the original note does not ordinarily discharge the mortgage. The question has been many times decided. See Watkins v. Hill, 25 Mass. 522, 8 Pick. 522; Pomroy v. Rice, 33 Mass. 22, 16 Pick. 22; Smith v. Prince, 14 Conn. 472; Hill v. Beebe, 13 N. Y. 556; Boyd v. Beck, 29 Ala. 703; Caldwell v. Pray, 41 Mich. 307; Barrows v. Turner, 50 Me. 127. To the same effect see, also, Lippold v. Held, 58 Mo. 213; Wiener v. Peacock, 31 Mo. App. 328.

The validity of the lien of the mortgage where there has been an exchange or substitution of notes for the original indebtedness depends entirely upon the intention of the parties and the courts will sustain such lien, if the rights of innocent third parties are not infringed, unless it appears the intention of the parties was to pay the old note by the substitution of the new. The rule obtains both at law and in equity; and in law cases, the question of intention is, of course, one for the jury and not for the court. [Jones on Chattel Mortgages (5 Ed.), sec. 643; Caldwell v. Pray, 41 Mich. 307; Hyma v. Three Rivers National Bank, 79 Mich. 167; Barrows v. Turner, 50 Me. 127.] That a note given in renewal of the one originally described in a mortgage enjoys the security of the mortgage lien if the parties so intended at the time is well settled and parol evidence is admissible to show that a note materially different from that described in the mortgage is a renewal of such note and in fact secured by the mortgage. [Jones on Chattel Mortgages (5 Ed.), sec. 89; Barrows v. Turner, 50 Me. 127; Clark v. Houghton, 78 Mass. 38, 12 Gray 38.]

All of the evidence introduced tended to prove that the parties to the present transaction did not intend a payment or extinguishment of the original indebtedness, but, instead, sought to substitute the new note in each

instance for the original, with an express agreement that the mortgage lien should continue to exist in its favor. The plaintiff succeeded to the rights of the original mortgagees with whom the agreement was made and its benefits inure to him. The rights of no third party are infringed and there is no valid reason why a court of law should not effectuate the result the parties intended. Upon full proof being made by the defendant, it may be that his theory of the case will indicate the mortgage lien was not to continue. If such be the case, of course, the question of intention is one for the jury.

But it is argued there is no evidence defendant's wife agreed the mortgage lien should continue, though the note was a substitution for the original, and this action may not be maintained for that reason. It may be said of this there is no direct proof that Clara B. Sisson owned any interest whatever in the property mortgaged. It is true it appears she signed the mortgage and all of the several notes with her husband, and the mortgage itself recites that any surplus arising from a sale of the property after satisfying the debt and costs shall be turned over to her, but this does not conclusively indicate her to be a joint owner of the property. The direction of a verdict for defendant on this theory may be sustained only on its appearing conclusively and beyond a reasonable inference to the contrary that Clara B. Sisson was a joint owner with her husband of the property mortgaged and had not agreed to a continuation of the lien of the mortgage as security for the substituted note; for if she were sole owner of the property and consented to a continuation of the mortgage lien, replevin will lie against her husband in possession. In the circumstances last suggested, the mortgage lien is valid against her and the overdue debt being unpaid, the horses may be replevied from any person who wrongfully withholds them. If defendant's wife were a joint owner of the horses and the lien of the mortgage as to her interest discharged, then a replevin will not lie

against the defendant, her husband, for possession on account of his undivided interest. Replevin may not be maintained for an undivided interest in chattels; as an undivided interest is not susceptible of delivery without the whole. The plaintiff must have an entire interest or a right to the entire and exclusive possession or his action will fail. [Wells on Replevin (2 Ed.), sec. 154; McCabe v. Black River Transportation Co., 131 Mo. App. 531, 110 S. W. 606; Steckman v. Galt State Bank, 126 Mo. App. 664, 105 S. W. 674.]

The recital in the mortgage that the surplus, if any after sale, should be turned over to Clara B. Sisson as much indicated her to be the sole owner of the property as it indicated joint ownership, if not more so. If she, as sole owner, mortgaged the property for her husband's benefit, and the mortgage lien continues to exist as against her, then replevin may be maintained against the defendant, her husband, if he is the person in possession. The fact that defendant is in possession of the property appears to be conceded throughout the case. Indeed, all of the proof except the recitals in the mortgage, which are in no sense conclusive, indicates not only that defendant was in possession but that he actually owned the horses as well and his wife was an unnecessary party to the mortgage though she is a joint maker of the note. It appearing that Clara B. Sisson signed the original and each of the substituted notes, it may be inferred she was present and consented to the continuation of the mortgage lien as a security therefor. The fact that the third note was given by her and defendant in all respects identical with the one originally described in the mortgage is a persuasive circumstance indicating an intention to connect its obligation with the elements of security vouchsafed in the mortgage instrument. The question as to whether Mrs. Sisson is either the sole or joint owner of the property and if so

whether she consented to a continuation of the mortgage lien is one for the jury.

The judgment should be reversed and the cause remanded. It is so ordered. All concur.