## J. J. SEYMORE and D. H. CROWELL, Respondents, v. W. C. DABBS, Appellant.

### Springfield Court of Appeals, April 7, 1913.

1. CHATTEL MORTGAGE: Mistakes of Recorder in Filing: Mortgagee Not Responsible for.  Nothing more is required of a mortgagee under a chattel mortgage, good on its face, in order to properly impart notice, than to file the same with the recorder; and for mistakes made by recorder in entering same, the mortgagee is not responsible.

2. ————: As Security for Mortgagor's Notes: For Renewal Notes.  As between the parties thereto, a chattel mortgage, which is given to secure sureties on mortgagor's note, remains a lien in favor of such sureties who sign renewal notes, if it is shown to have been the intention of the parties that the mortgage so remain.

3. ————: Renewal Notes: Rights of Innocent Third Parties.  But if the rights of innocent third parties would be infringed thereby, the mortgage will not be a lien to secure the renewal notes.

4. ————: Note and Renewal Note Differing: Rights of Mortgagee as Against Third Parties.  A chattel mortgage was given to secure sureties on a note.  After the mortgage was filed the mortgaged property was sold to an innocent third

party by the mortgagor. The sureties and the principal on the note afterwards executed a renewal note, but a different payee was named therein and the note was for a larger amount than the former. *Held*, that the mortgage did not secure the subsequent renewal note.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles B. Butler* and *David W. Hill* for appellant.

(1) Plaintiffs claim the right to the possession of the mules in suit by virtue of a second chattel mortgage, which was given to them to secure the payment of a note executed to G. A. Sheppard, payee. That note was executed by Rook, as principal, and by plaintiffs as sureties. It was not paid off by a renewal note, but was paid off with money borrowed on a new note, a new contract. The new note was executed by Rook as principal and plaintiffs as sureties, to the Ripley County Bank, payee. It certainly cannot be called a renewal of the Sheppard note, because a renewal note is from the same parties to the same parties. It is true that this note was executed by the same parties, but to a different payee and we take the position that this was a new and entirely different contract from the note that was given to G. A. Sheppard. This new note is not expressly or impliedly within the terms of the second chattel mortgage, the contract upon which plaintiffs rely. The court will bear in mind that this second chattel mortgage does not provide for renewal notes. No evidence was introduced to show that this second chattel mortgage was to cover the note executed to the Ripley County Bank or any renewal thereof and such evidence would have been incompetent, as attempting to vary, contradict and enlarge a written instrument, to-wit, the second chattel

mortgage, and such testimony would have been improper to bind the rights of an innocent third party, such as the defendant in this case. Caldwell v. Sisson, 150 Mo. App. 547.

No brief for respondents.

FARRINGTON, J.—This was a suit in replevin, and is here on the defendant's appeal. It appears that the plaintiffs instituted the action before a justice of the peace of Ripley county to replevin from the defendant two mules, basing their claim on a chattel mortgage dated February 8, 1910, on the two mules and a wagon and set of harness, securing a note for $185, which mortgage was filed in the recorder's office on the day of its execution. Counsel for appellant have in their abstract a small photograph of the page of the index of chattel mortgages filed with the recorder of Ripley county and have had prepared from this photograph a blue print with the entries concerning this case much enlarged, and they are as follows:

"*No.* 3082, *Grantor,* W. E. Rook. *Grantee,* B. H. Crowell et al. *Time of Filing,* Feb. 3, 1910. *Description of Property,* Black mare mule 8 yr. old 15 H. H. Sorrel horse mule, 8 yr. old 15 H. H. *Amount of Debt,* $135. *Satisfaction,* Satisfied, W. C. Dabbs. *Date of Satisfaction,* Aug. 12, 1910."

Immediately following this on the page of the index appear these entries:

"*No.* 3090, *Grantor,* 'Do.' *Grantee,* 'Do.' *Time of Filing,* Feb. 8, 1910. *Description of Property,* Black mule 15 H H 8 yr. old. Sorrel mule 15 H H 8 yr. old, wagon and harness. *Amount of Debt,* $185. *Satisfaction,* 'Withdrawn and Recorded.' *Date of Satisfaction,* July 29, 1911."

W. E. Rook sold the mules to the defendant, W. C. Dabbs, in April or May, 1910. The uncontroverted testimony is that the defendant had no actual knowl-

edge of any mortgage whatever on them when he pur-
chased them, and if he cannot be held to be an innocent
purchaser it is because of the notice which the records
of the county would impart.

It appears that in indexing the second mortgage,
the words "Withdrawn and Recorded" are placed un-
der the printed heading, "Satisfaction," and that the
date when it was "Withdrawn and Recorded," namely,
July 29, 1911, is placed under the printed heading,
"Date of Satisfaction." It will be observed that this
was over a year from the time defendant purchased
the mules. It also appears on the mortgage, but not
on the county records, that this mortgage was can-
celed February 12, 1910. The evidence shows that
Rook made the first note, of $135, to the Ripley Coun-
ty Bank, and that B. H. Crowell, Ed Ferguson, W. H.
Stone and Grant Wilson signed this note as sureties,
and that the first mortgage on the mules was given
to the sureties for their protection. Afterwards, Rook
executed a note to G. A. Sheppard for $185, which B.
H. Crowell and J. J. Seymore (the plaintiffs herein),
signed as sureties, and in order to secure them for
signing, Rook gave them a second mortgage on the
mules. Both of the mortgages were filed with the re-
corder, as has been shown. When Dabbs, the defend-
ant herein, bought the mules from Rook it is uncontro-
verted that he did not know of either of the mort-
gages, but that Rook at the time told him there was
$135 against the mules at the Ripley County Bank
which he would have to take up. Defendant paid
$200 for the two mules, in the following manner: $135
to the Ripley County Bank to take up the $135 note,
which, unknown to him, was secured by a first mort-
gage to the sureties on the note; delivery of a cow
by defendant to Rook valued at $35; and $30 paid in
money to Rook. Defendant kept the mules from April
or May, 1910, until September 5, 1911, when this suit
was brought to recover them under the second mort-

gage which had been given to secure the note for $185 payable to G. A. Sheppard. Sheppard had transferred the $185 note to the Ripley County Bank, and when it became due, Rook, Crowell and Seymore executed a new note to the bank (on August 4, 1910) for $187 and took up the $185 note, and the bank having marked it paid gave it to Rook, who, in turn, gave it to defendant. There were one or two other renewals made subsequently in the same way, and each time the old note would be marked paid by the bank and delivered up and a new note would take its place. Finally, Rook left, and the plaintiffs herein, who were sureties for him on the note, took up the note and gave their own note to the bank for the balance.

It is claimed by the plaintiffs that all notes made by them as renewals covered the same indebtedness which was shown by the note for $185 payable to G. A. Sheppard, and that therefore the lien of the mortgage protected them on the renewal notes. It will be observed, however, that the chattel mortgage given to secure the sureties on the Sheppard note (the plaintiffs herein) contained no stipulation that it was to cover renewals.

It is contended on behalf of the defendant—as we gather from the record—that he was bound only by constructive notice, there being an entire absence of any showing of actual knowledge on his part that a mortgage or mortgages had been given, and that the mortgage recorded would not be constructive notice to him; that it was intended as a lien for renewal notes made after he had bought the property.

There is no doubt that the file book of the recorder is more or less indefinite, in that the entry on the index of the second mortgage does not show in writing the names of the grantor and grantee, but merely has the ditto mark under the names of the grantor and grantee in the first mortgage. This, however, we do not believe would defeat the notice as the mortgage

was good on its face, and all that is required of the
mortgagee is that he file the mortgage with the re-
corder; it is not essential, in order that notice be im-
parted, that he stand by and see that it is properly in-
dexed. He is not responsible for the mistakes of the
recorder. [Faxon v. Ridge, 87 Mo. App. 299.] We·
are also of the opinion that between the parties the
mortgage given to secure the sureties, as it was in
this case, would remain a lien if it was intended be-
tween them that the mortgage should so remain.
[Caldwell v. Sisson, 150 Mo. App. 547, 552, 131 S. W.
140, and authorities therein cited.] However, it ap-
pears that the mules were sold by Rook to the defend-
ant, not later than May, 1910, and at that time the
two mortgages were filed and gave sufficient notice to
the defendant that the mules were subject to both
mortgages; but on August 4, 1910, after Rook, the
mortgagor, had sold the mules and parted with all title·
and possession, Rook and the plaintiffs herein executed
the renewal note, changing the payee from G. A. Shep-
pard to the Ripley County Bank. At the time this
was done, Rook had no right to make any agreement
affecting the mules; nor could any intention, in our
opinion, be inferred that the mortgage was to secure
the renewal note. Though the renewal note was
signed by the same parties, it was made to a different
payee and for a different amount—$187 instead of
$185. The subsequent renewal note or notes were of
course made long after Rook had parted with posses-
sion and title to the mules. In order to make the mort-
gage cover the subsequent notes, which were different
from that described in the mortgage, required an in-
tention of the parties to that effect, and to hold that
defendant did have constructive notice of this agree-
ment or implied agreement would charge him with a
knowledge of more than an actual reading of the mort-
gage would disclose and would in our opinion work
an injustice. The note for $185, payable to Sheppard,

which was originally secured by the second mortgage
to the sureties on the note, was produced by the de-
fendant at the trial marked paid; and this mortgage,
containing no clause for renewals, would · certainly
not impart notice to the defendant under the statute
of an intention on the part of Rook and the two plain-
tiffs that the mortgage was to cover the renewals.
On the other hand, even though Rook and the two
plaintiffs agreed that the second mortgage should
cover the renewals at the time the renewals were
made, or if an inference could be drawn that the in-
tention was that the mortgage would cover the notes,
such intention would not bind the defendant as the
property had long since passed opt of Rook's hands
and he had lost title thereto. This they could not do,
however, because at the time Rook and the plaintiffs
executed the renewal notes, Rook had no authority
or right, having sold the property, to bind it by any
such agreement or intention. The case of Caldwell
v. Sisson, supra, expressly holds that the intention
of the parties to make the lien of the mortgage secure
the renewal notes will be effective for that purpose if
the parties intend that it shall, provided the rights
of innocent third parties are not infringed. The sec-
ond mortgage gave notice to the defendant only that
the mules were mortgaged to pay a note for $185 pay-
able to G. A. Sheppard, and there was nothing of rec-
ord that would impart to him any notice that the mort-
gage was intended to cover a note or notes made in
renewal of this note for a different amount and to a
different payee. If the parties themselves intended
the renewal notes to be covered, such intention was
not disclosed by anything of record that defendant was
bound to know.

The case of Finks v. Buck, 27 S. W. (Tex.) 1094,
is in many respects similar to the one under consider-
ation, the principal difference being that the note
marked paid in that case was shown to the purchaser

of the property at the time he purchased it, whereas in the present case the $185 was turned over to and was in the possession of the defendant at the time of the trial, but· there was no showing when it was handed to him by Rook. The Texas case, however, is decided on the ground that by the cancellation and payment of the note as described in the mortgage and by turning over the note to the mortgagor in the presence of the mortgagee, marked paid· by the. bank, the fact that there was a renewal note made for the balance could not be set up against a purchaser with no knowledge of the fact that the mortgage was to cover the renewal.

There are a number of other questions raised by the appellant which need not be discussed under the view we have taken of the case. The judgment is reversed and the cause remanded with directions to the circuit court to enter a· judgment in favor of the defendant. All concur.