WARREN CADWELL AND MARVIN CADWELL v. ORMON O. PRAY.

*Chattel mortgage on after-acquired goods—Right of possession— Sale—Demand of payment before replevying the goods.*

A chattel mortgage on a stock of goods may be made to cover goods afterwards put in to keep up the stock.

It is for the jury to determine whether there was confusion of goods in a stock of general merchandise: or whether all the goods in a store were covered by a chattel mortgage.

A chattel mortgage was given April 10, 1876, to secure a note payable in one year, and on April 2, 1877, a note for the amount left unpaid was given and the old note given up. There was conflicting evidence as to whether the mortgage remained in force. *Held* error to charge that there was no question of its valid existence to April 12, 1877, and that its filing was notice until that time; it was for the jury to determine as to these facts.

The assignee of a note replevied a stock of goods said to be mortgaged as security. There was a dispute as to whether the mortgage was then in force. *Held* error to exclude evidence that before assigning the note, the assignor had, 'as commercial reporter, reported the stock free from mortgage.

A mortgager of chattels has the right to make a general sale of whatever interest he owns.

A mortgager of chattels may reserve the right to take possession of them if sold, but the right is optional and the mortgager is not in fault for not delivering the goods if they are not demanded.

Replevin rests on the tortious taking or detention, and cannot be brought until after demand made.

The mortgagor of chattels has the right of possession until demand is made for them, and must keep them safely until then.

A chattel mortgage provided that the mortgagee might take possession in case the property was sold. *Held* that a demand of payment before the debt was due was not a demand for the goods; especially if made by the assignor of the debt from the vendor of the goods, since both had parted with their interests.

Error to Clinton. Submitted June 17 and 18. Decided July 1.

REPLEVIN. Defendants bring error.

*R. Strickland* and *A. Stout* for plaintiffs in error. A mortgager of chattels in possession can sell and deliver them before default, and if the assignee sells them before they are taken on the mortgage, he is not liable for conversion, *Hathaway v. Brayman,* 42 N. Y., 322; and replevin will lie only where trespass would, *Barrett v. Warren,* 3 Hill, 348; *Hanford v. Artcher,* 4 Hill, 273; *Randall v. Cook,* 17 Wend., 54; the relation of the owner of a chattel mortgage to the mortgager is that of a secured creditor and he does not become absolute owner of the chattels on breach of condition, *Lucking v. Wesson,* 25 Mich., 443.

*O. L. Spaulding, H. Walbridge* and *O. W. Barker* for defendant in error. In replevin for goods seized under a chattel mortgage, evidence of an admixture of other goods is admissible, *Adams v. Wildes,* 107 Mass., 123;

*Willard v. Rice*, 11 Met., 493; *People v. Bristol*, 35 Mich., 28; Herman on Chattel Mortgages, 83; a chattel mortgage is not discharged by merely taking a new note, id., 128; *Hill v. Beebe*, 13 N. Y., 556; *Flower v. Elwood*, 66 Ill., 438; *Choteau v. Thompson*, 3 Ohio St., 424; *Boswell v. Goodwin*, 31 Conn., 74; *Darst v. Bates*, 51 Ill., 439; the owner of a chattel mortgage can bring replevin on condition broken, Herm. Chat. Mort., 486; *Woodruff v. Halsey*, 8 Pick., 333; *Brookover v. Easterly*, 12 Kan., 149; *Gilchrist v. Patterson*, 18 Ark., 575; *Whitney v. McConnell*, 29 Mich., 12, and need not demand them first, *Trudo v. Anderson*, 10 Mich., 357; *Ballou v. O'Brien*, 20 Mich., 307; *Deyoe v. Jamison*, 33 Mich., 94.

CAMPBELL, C. J.   Pray replevied certain goods from the plaintiffs in error, Warren and Marvin Cadwell, claiming a right to them as mortgagee, under a mortgage from Marvin Cadwell to John A. Barrington.

On the tenth day of April, 1876, Marvin Cadwell gave his note to Barrington for $1,150, payable without interest one year from date, and secured it by a chattel mortgage on his stock of goods, in Eureka, Clinton county, valued at $2,300, " said stock to be kept up to present value, until above mentioned debt is satisfactorily paid.   The mortgagee was authorized when he should deem himself insecure, or in case of sale, assignment, disposal or removal of any of the property without written consent, to take possession and keep it until the debt accrued and then sell.   This mortgage was filed April 12, 1876, in the town clerk's office, but never renewed.

On the second day of April, 1877, several days before the mortgage became due, and there then remaining unpaid $800, Marvin Cadwell gave Barrington a note for $800, with interest at ten per cent., payable in twelve months, and due therefore on the fifth of April, 1878. Barrington gave up the old note.   One principal question in dispute is whether the mortgage was continued

as security for this new note, or whether it ceased to operate.

Marvin Cadwell continued in business buying and selling goods. On or about February 12, 1878, Barrington agreed to sell to Pray an interest of $600 in the last note and guaranteed its collection March 30th. Marvin Cadwell paid the interest and $200 of the principal to Barrington, who on the same day gave the note thus reduced to $600, to Pray, and who also undertook to assign the chattel mortgage to him.

On the second day of April Barrington is claimed to have been sent by Pray to have an interview with Marvin Cadwell. The account given of this interview by Barrington is substantially as follows: He met Marvin Cadwell and asked him in Warren Cadwell's presence for payment of the note. He said it was not convenient to pay it, and on being asked when he proposed to pay it, replied,—'when he got ready.' Barrington said: "I understand you have sold your goods here to your brother." Cadwell said: "I don't know as that is any of your business." Barrington then said: "I propose you pay the note before you are ready." Cadwell said: "I would like to see how you do it." Barrington then said: "By virtue of this mortgage I hold upon the goods." Cadwell said: "You hold no mortgage; I want nothing to do with you except on the floor of the court-room." Barrington took the mortgage and read it, and then asked Marvin Cadwell if he wished to pay it. He said he did not. This ended the conversation. On this same day Pray sued out this replevin.

There was evidence tending to show that on March 28th Marvin Cadwell had sold out to his brother Warren, and that this was what induced Pray to send Barrington to the store on April 2d. There was also evidence tending to show that some of the goods had never belonged to Marvin, and were put in the store by Warren.

The many questions arising on the trial, so far as now important, may be disposed of separately. The objection taken by plaintiffs in error that the mortgage did not cover goods put in to keep up the stock, is of no force, as it expressly contemplates and covenants to keep up the stock, and we have frequently held this is competent. *People v. Bristol,* 35 Mich., 28; *American Cigar Co. v. Foster,* 36 Mich., 368.

Whether the mortgage was in existence as a security for the new note was a question of fact. There was evidence on both sides. It is claimed the court made erroneous rulings on this subject. We think there is ground for these objections. The court charged that if the mortgage was valid at all, it was valid as to all the goods in the store. This was in disregard of the evidence that Warren Cadwell had goods there which had never belonged to Marvin. The suggestion that there was a confusion of goods is of no weight. Such goods can generally be distinguished, and we find nothing to lead to any conclusion to the contrary. If there had been, the fact would still have been for the jury.

The court also—no doubt from oversight—charged that there was no question of the valid existence of the mortgage up to April 12, 1877, and that up to that time its filing was notice to Warren Cadwell and all others. The only note or other evidence of debt referred to in this mortgage was given up on the second of April, 1877, and there was evidence for the jury that the mortgage was then extinguished. This was also for the jury.

The court refused to allow proof that in 1876 Barrington, who was commercial reporter, reported Cadwell's stock as mortgaged for $1,150, and in 1877 that it was clear. It is claimed that the court did not absolutely refuse to receive this, but offered to receive the substance of it by way of contradiction or impeachment. We do not understand just what this explanation means as found in the record. But we think it was receivable as original evidence to prove very deliberate admissions of

Barrington, inconsistent with the existence of any mortgage. They were admissions against interest, and made before he parted with any rights. How far they would affect Pray must depend on other facts before the jury.

There was also ground for complaint of the rulings concerning the right to sue in this case. The court held that any sale or attempt at a sale of the goods gave an immediate right to replevy without demand. We think this is not so.

It may be dangerous to allow sales which will decrease a mortgage security, although such sales were in this very mortgage contemplated, and only guarded against by a covenant to replenish, and a right to take possession in case the mortgagee deemed himself insecure. But there can be no wrong or impropriety in making a general sale of whatever interest the mortgagor owns. A mortgagee may, as was done here, reserve the right to take possession on such sale, but there is no ground for claiming it to be in violation of his rights in this State, where a chattel mortgage is not considered an absolute sale, but is only a security.

The right to take possession is optional, and the mortgagor cannot be in fault for not delivering up what has not been demanded. Replevin is an action resting on a tortious taking or detention of property, and should not be brought against one who is not in fault. We think that until demand made, there was nothing to put the parties in the wrong. It was their duty to keep the property safely until so demanded, and it was their right to possess it. See *Campbell v. Quackenbush*, 33 Mich., 287. The contrary doctrine belongs to the old theory of chattel mortgages which treated them as sales and not as securities.

There was no evidence of a demand. Barrington does not appear to have acted at all in the name of Pray, and all the demand he made was a demand of payment which was three days before the debt was due. He

made no demand at all of Warren Cadwell, although it was only on the ground of a sale to him that any action whatever was taken.

It was necessary in this action, in order to reach all the rights of parties, to show the amount of the mortgage interest, if there was a mortgage, and the amount of goods covered by the mortgage and not covered. We do not think it necessary to spend time on these matters, because there has been some misapprehension which is not likely to arise again.

For the errors referred to the judgment must be reversed with costs and a new trial granted.

The other Justices concurred.