O. V. DODGE v. E. B. SMITH *et al.*
No. 214.

1. CHATTEL MORTGAGE — *lien of, on after-acquired property how far valid.* At common law nothing can be mortgaged that is not in existence or when it does not belong to the mortgagor at the time when the mortgage is made, but parties may make a contract with reference to after-acquired property to be added to, and made a part of, the property mortgaged, and the contract will be valid and binding between the parties ; and to all those dealing with property with a full knowledge of this condition in the mortgage, if the future-acquired property is mingled with the property described in the chattel mortgage, and is added to, and becomes a part of, the stock of goods mortgaged, and the rights of third persons have not intervened, it becomes a lien on all the property intermingled and added to the mortgaged property. *Campbell v. Quinton*, 4 Kan. App. 317, 45 Pac. Rep. 914.

2. ———— *taking, subject to prior mortgages estops from contesting them.* Where a party takes a third chattel mortgage on personal property to secure an antecedent debt, with full knowledge of the terms and conditions of the first and second mortgages, and takes such third mortgage subject to the first and second mortgages, he is thereby estopped from contesting the validity of the former mortgages.

Error from Barton District Court. Hon. J. W. Bailey, Judge. Opinion filed December 1, 1896. *Reversed.*

This was an action in replevin, brought by Dodge, first mortgagee, against Doolittle Brothers, subsequent mortgagees, to recover possession of a stock of hardware.

The Owings Hardware Company had purchased the property in controversy from Dodge, and given its mortgage to secure the payment of the purchase money. The Dodge mortgage contained the following stipulation :

"It is hereby understood and agreed that this mortgage is to cover all other goods of every kind and nature whatsoever, which may be purchased by the said parties [of the first part] and placed for sale as a part of the merchandise stock."

In pursuance of this provision the Owings Hardware Company, as their business required it, bought new goods, which were intermingled with the general stock. Afterwards the Owings Hardware Company made a second mortgage to J. V. Brinkman & Co., upon all the merchandise owned by them, including both the original stock as purchased from Dodge and also their subsequent purchases. Afterwards the Owings Hardware Company made still another mortgage, to Doolittle Brothers who placed their agents, Smith Brothers, in possession of the stock. The mort-

gage to Doolittle Brothers contained the following clause :

"Warranted free from incumbrances and against any adverse claim, excepting $4,360.91 and interest due Dodge and $1,400 due J. V. Brinkman & Co."

The debt of Dodge falling due and remaining unpaid, he began this action. The court below instructed the jury that Dodge had a first lien upon, and at the time this suit was brought was entitled to the possession of, such goods as the Owings Hardware Company owned at the time of giving the Dodge mortgage ; and, the liens of Dodge and Brinkman & Co. having become consolidated, by redemption after the beginning of this action, in the hands of a fourth mortgagee which did not press its claim, that Doolittle Brothers had a first lien upon the property subsequently acquired. In obedience to these instructions the jury returned a verdict of two thousand dollars in favor of Doolittle Brothers and against the plaintiff in error.

*Samuel Maher*, and *Wm. Osmond*, for plaintiff in error.

*E. B. Smith*, for defendants in error.

JOHNSON, P. J. The contention of counsel for plaintiff is that the court erred in taking the position, and instructing the jury, that the property subsequently purchased by the mortgagors and added to and mingled with the property of the mortgagors — even though the mortgage expressly provided that the mortgage lien should extend to and cover the after-acquired property added to the stock of hardware, tools and fixtures, and that the mortgagee should be authorized to take possession of the same in case of condition broken in the mortgage, or in case he should deem himself insecure — became in no way subject to

the mortgage lien, or under the dominion or control of the mortgage. At common law nothing can be mortgaged that does not belong to the mortgagor at the time when the mortgage is made. *Pierce v. Emery*, 32 N. H. 484; *Cameron v. Marvin*, 26 Kan. 628. Parties may make contracts with reference to future-acquired property to be added to, and made a part of, the property mortgaged, and the contract will be valid and binding between the parties; and, if the future-acquired property is mingled with the property described in the mortgage and is added to and becomes a part of the stock of goods mortgaged, and the rights of third persons have not intervened, it becomes a lien on all the property so intermingled and added to the mortgaged property.

When Doolittle Brothers took their mortgage upon the stock of hardware they took it with full knowledge of the mortgage of O. V. Dodge and J. V. Brinkman & Co., and took the mortgage on the entire stock of goods including the original stock and the added stock, subject to the mortgage of $4,360.91 and interest due Dodge, and $1,400 due Brinkman & Co.; and by reason thereof they occupied the same position that the Owings Hardware Company would, had the mortgage to Doolittle Brothers not been executed.

Doolittle Brothers took the mortgage subject to the Dodge mortgage, and hence are estopped from contesting the Dodge mortgage. *Campbell v. Quinton*, 4 Kan. App. 317, 45 Pac. Rep. 914; *Leland v. Collver*, 34 Mich. 421; *Railway Co. v. Cowdry*, 11 Wall. 473; *Pennock v. Coe*, 23 How. 117.

The case of *Leland v. Collver*, supra, was a suit in trover for the conversion of certain furniture that had been the stock in trade of the plaintiff. The defendant justified under a chattel mortgage which was

given for the purchase money of the stock of goods mentioned in it. The property mortgaged was set forth and described in the following terms:

"All the goods, wares and merchandise, chattels and effects mentioned and described in schedule hereto annexed and marked, 'Schedule A,' this day bought of Illenden and Collver, thereby intending to convey all the present stock in trade as enumerated in said schedule, also all stock that I may have from time to time in trade as security for the above-named consideration, said goods to remain and continue in possession of the party of the first part, in the village of Three Rivers, Mich., except as they are disposed of in the usual course of retail trade; the party of the first part is to have the privilege of selling the goods for cash or on credit, in the usual course of trade, and is to apply the proceeds of the sale in buying other goods to keep up the stock and to support his family   The party of the first part covenants to keep up a stock of like goods to the value of three thousand dollars as security to the party of the second part, until the above amount with interest is paid, and also covenants to keep the stock insured to the amount of two thousand dollars for the benefit of the party of the second part, and as collateral thereto, and a breach of the last two covenants shall cause the whole sum secured to become due and payable."

Snyder, the mortgagor, after making the mortgage, continued in business, alone and in partnership with others, for some time, and then sold his interest to John Koahn who continued to carry on the business for several months, when he sold out his entire stock to Nancy Moore, giving an inventory which was declared to be subject to a chattel mortgage. There was no other chattel mortgage except the one to Collver. The several purchasers of this stock of furniture continued in business for some time, and during their continuance in business they added $344 worth of goods purchased from other parties, and sold about

fifteen hundred dollars' worth at retail. All the persons who became interested in the stock of goods took it with notice of the chattel mortgage and bought subject to the chattel mortgage. Campbell, J., delivering the opinion of the court, says:

" In the present case the parties have seen fit to stipulate expressly that the body of the fund may be changed without losing its identity, and that the mortgagee may deal with it as if unchanged. The various purchasers have made their purchases subject to this arrangement, and are estopped from denying it. The mortgagees, in taking the property, did only what Snyder agreed they might do, and what the several purchasers also understood they were authorized to do."

The evidence on the trial of this case shows, that all the property taken in replevin by the plaintiff, which was not in stock and not owned by the Owings Hardware Company at the time the mortgage was executed, though included therein and covered thereby, was subsequently purchased by the mortgagors and placed in said mortgaged stock; that the mortgagees had been selling out of the stock of hardware from the time they first purchased the stock, and from time to time added new goods to the stock of hardware; that they were simply keeping up, and adding to, the stock which they had purchased from Dodge and for which they had given the mortgage as security, and were carrying out their contract to keep the stock up; and that, when they executed the mortgage to J. V. Brinkman & Co. and to Doolittle Brothers, these latter each took their mortgages subject to the right and the lien of Dodge.

We think they are estopped from denying it. We think the mortgage to Dodge was a valid lien on all the stock of merchandise, tools and fixtures which was owned by the Owings at the date of its execution;

that it became a lien in equity on all the subsequently acquired goods as soon as they were purchased and added to the general stock in the hardware business; that plaintiff, on the breach of the conditions of the mortgage, had authority to take possession of the stock of hardware, tools and fixtures then in said stock and sell the same to pay his debts and costs of making such sale; that, upon a refusal of the defendants to deliver up the property to the plaintiff on demand, he could maintain replevin to recover the entire stock; and that his right to the possession of the property for the payment of his debts, was paramount to the lien of Doolittle Brothers.

The judgment of the District Court is reversed, with direction to set the verdict of the jury aside and grant a new trial.