**EMPIRE LIFE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,**

v.

**VALDAK CORPORATION, Defendant-Appellant.**

No. 72–1063.

United States Court of Appeals, Fifth Circuit.

Oct. 12, 1972.

Rehearing Denied Nov. 10, 1972.

Donnie R. Duplissey, Dean Carlton, Dallas, Tex., Byron Edwards, Grand Forks, N. D., for defendant-appellant.

Stewart Frazer, Douglas E. Bergman, Dallas, Tex., for plaintiff-appellee.

Before BELL, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

In this diversity case involving the precipitous diminution in value of stock pledged by defendant as collateral for a loan, plaintiff, suing for a deficiency judgment after a foreclosure sale, advocated one theory of the Uniform Commercial Code; defendant advanced a different reading of the U.C.C., and the trial court applied yet a third application of the Code. Finding the Code to be inapplicable to the transaction at issue, and finding defendant's counterclaim for fraudulent depletion of the collateral wrongfully dismissed, we reverse and remand the case for a new trial.

The facts show that on September 30, 1965, plaintiff, an insurance company residing in Texas, loaned defendant, a North Dakota corporation, $350,000 with repayment due on September 30, 1970. As collateral for the loan, defendant pledged 50,000 shares of stock in National Insurance Company (hereinafter "National") in accordance with a written security agreement dated September 30, 1965, and apparently signed in North Dakota. Sometime in 1965 plaintiff gained control of National, and defendant alleges that at the time plaintiff took control the 50,000 shares held as collateral were worth approximately $24 a share ($1,200,000). When the note came due on September 30, 1970, defendant failed to pay. Shortly thereafter plaintiff notified defendant that the collateral would be liquidated at a given time and place at a private sale and that unless defendant paid the debt prior to the date of sale, plaintiff would file suit for whatever deficiency resulted from the foreclosure sale. Defendant failed to respond to the notice of sale and on November 30, 1970, plaintiff, allegedly in accordance with a provision in the security agreement permitting such action, sold the stock to itself for $3.00 a share ($150,000). In January of 1971, plaintiff filed this suit in federal court, claiming that defendant still owed $261,950 on the loan.[1]

Defendant answered that the purported private sale was invalid and that therefore no deficiency was owing, and further counterclaimed that since 1965 plaintiff fraudulently and illegally used its control of National to devalue the corporation and in consequence to deplete its assets in violation of plaintiff's duty to defendant as pledgee of the collateral. The fraudulent acts of plaintiff alleged by defendant included, inter alia, execution of a service agreement between the plaintiff insurance company and National which depleted National; discharge of experienced employees and depletion of National's agency force; sale of certain mortgages by plaintiff to National which resulted in a loss to National; and loans to officers and directors at lower rates of interest than the going rate, contrary to statute. Prior to trial, the district court granted plaintiff's motion to dismiss the counterclaim.[2]

At the trial on plaintiff's main claim for the deficiency judgment, extensive evidence was introduced by both sides as to the value of the stock at various times and the case was sent to the jury with instructions to decide (1) whether the foreclosure sale met the standards of "commercial reasonableness" as defined in the Uniform Commercial Code, particularly section 9–504; and (2) what the fair market value of the National stock was on November 30, 1970. The jury returned a verdict finding that (1) the

---

1. The figure was computed as follows:

| | |
|---|---|
| Principal | $350,000 |
| Interest (to 11/30/70) | 24,500 |
| Attorney's Fees | 37,450 |
| | 411,950 |
| Credit from Sale | (150,000) |
| TOTAL AMOUNT DUE | $261,950 |

2. The record does not reveal the specific reasons relied upon by the trial court for granting the dismissal. From our reading of the record, we assume the dismissal was based upon plaintiff's contentions that (1) the counterclaim was essentially derivative in nature and the failure to join National as a party plaintiff rendered the claim procedurally deficient under Rule 23.1, Fed.R.Civ.P.; and (2) the statute of limitations barred the counterclaim.

sale was not "commercially reasonable," and (2) the fair market value of the stock on November 30, 1970, was $3.25 per share. The court thereby allowed defendant a set-off of $162,500 and gave plaintiff judgment for the deficiency, interest, and attorney's fees, totalling $249,400. From this judgment defendant appeals, claiming that (1) under the U.C.C., no deficiency should have been entered since there was a factual finding that the foreclosure sale was not commercially reasonable, and (2) the counterclaim for depletion of the collateral was wrongfully dismissed.

### The Foreclosure Sale & Deficiency Judgment

At oral argument of this appeal, the bench raised the threshold question (apparently for the first time in the litigation) of whether the U.C.C., upon the standards of which the trial was based, was applicable to the transactions at issue.[3] The security agreement was drafted on September 30, 1965, and the effective date of the Code in both Texas and North Dakota[4] was July 1, 1966. Section 10–102(2) of the Code[5] provides:

"Transactions validly entered into before the effective date specified in Section 10–101 of this Act and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated, or enforced as required or permitted by any statute or other law repealed or modified by this Act as though such repeal or modification had not occurred."

In the overwhelming majority of cases where retroactivity of the Code has been in issue, it has been found that when a transaction was entered into[6] prior to the effective date of the Code, the transaction would thereafter be governed for all purposes by the law in effect when the transaction was entered into. E. g., In re Kokomo Times Publishing and Printing Corp., D.Ind.1968, 301 F.Supp. 529; Phoenix v. Kovacevich, 246 Cal.App.2d 774, 55 Cal.Rptr. 135 (1966); Leiter v. Arnold, 114 Ga.App. 323, 151 S.E.2d 175 (1966); Wellbro Building Co. v. McConnico, 421 P.2d 837 (Okl.1966); McCormack v. E. E. McCormack Co., 239 Or. 264, 397 P.2d 198 (1964); and Lack's Stores, Inc. v. Waisath, *supra* note 5. *Contra,* United Sec. Corp. v. Bruton, 213 A.2d 892 (D.C.App. 1965). The conclusion is therefore inescapable that this security agreement, entered into ten months before the effective date of the Code in both Texas and North Dakota, is governed by the prior law, even as to those aspects of the transaction, including the foreclosure, that took place after the effective date of the Code.

From our reading of the pre-Code law, it is clear that the standard for judging the validity of a foreclosure sale is significantly different from the standard enunciated in the U.C.C. Rather than employing a standard of "commercial reasonableness," which re-

---

3. The parties were given an opportunity to file supplemental briefs on the issue of whether the U.C.C. or prior law should be applied.

4. Inasmuch as the security agreement was apparently executed in North Dakota and involved acts to be performed in Texas, the trial court, on remand, must determine on the basis of the relevant facts which jurisdiction's pre-Code law should govern the instrument. Regardless of the determination of that issue, it is clear that the Code was not effective in either jurisdiction when the transaction was entered into.

5. We are cognizant of the rather enigmatic fact that Texas failed to re-enact article 10 of the Code when it enacted the Business and Commerce Code in 1967. Even assuming Texas law applies to the instant transaction (and we do not pass on that question), we do not believe that the Code was enacted with the intention of retroactive application. *See* Lack's Stores, Inc. v. Waisath, 464 S.W.2d 220 (Tex.Civ.App.1971), rev'd on other grounds, 474 S.W.2d 444 (Tex.Sup.Ct.).

6. In cases such as the one before us, the transaction is considered to be "entered into" at the time the security agreement is executed.

quires the secured party to meet various prerequisites regardless of prearranged foreclosure provisions in the security agreement, the prior law merely requires the pledgee to dispose of the collateral in "good faith." Compliance with a prior contractual agreement as to the mode of disposal has, under the prior law, generally been considered good faith, absent some gross impropriety. *See* Taylor v. Banks, 392 S.W.2d 856 (Tex.Sup.Ct.1965); Anchor v. Gose, 8 S.W.2d 690 (Tex.Civ.App.1928); Elmer v. Elmer, 203 So.2d 391 (La.App. 1967); In re Kiamie's Estate, 309 N.Y. 325, 130 N.E.2d 745 (1955). The U.C.C. introduced into our commerce a new set of business folkways and commercial mores. The trial below, however, was wrongfully predicated upon that new set of folkways and mores. The commencement date of the Code was set by statute, and we are not at liberty to apply the law *nunc pro tunc*.

 We are fully cognizant of the fact that both parties and the trial court tried this case under the assumption that the U.C.C. was applicable, and we are aware that a new trial will be burdensome on all parties. We are aware that as a general rule parties should be held bound by whatever theory of law they argued below and absent some manifest injustice, an appellate court should not allow a party to attempt a whole new theory after he has been unsuccessful at trial. *See e. g.*, D. H. Overmyer Co. v. Loflin, 5 Cir. 1971, 440 F.2d 1213. The rationale for this rule derives from the needs of judicial economy and the desirability of having all parties present all their claims in the court of first instance. *See* Hormel v. Helvering, 1940, 312 U.S. 552, 556–560, 61 S.Ct. 719, 721–723, 85 L.Ed. 1037, 1040–1043. Here, however, it is not one of the parties seeking to advance a new theory, rather, it is this court, in fulfillment of its duty to apply the *correct* law, that is seeking to put the case back on the right

track.[7] Since the case must, in any event, be remanded for trial on the counterclaim, neither the ends of judicial economy nor the ends of justice would be well served by our acquiescence in the erroneous application of law indulged in by all parties below. It is well established that as a matter of discretion, an appellate court may pass upon issues not pressed before it or raised below when the ends of justice will be best served by doing so. *See* American Surety Co. of N. Y. v. Colblentz, 5 Cir. 1967, 381 F.2d 185; In re Linda Coal and Supply Company, 1 Cir. 1958, 255 F.2d 653; De Fonce Construction Company v. City of Miami, 5 Cir. 1958, 256 F.2d 425. *See, generally*, Hormel v. Helvering, *supra*. We feel this is such an instance and that we would be amiss if we did otherwise.

 Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. McCrea v. Harris County Houston Ship Channel Navigation Dist., 5 Cir. 1970, 423 F.2d 605, 610; Kurdziel v. Pittsburgh Tube Co., 6 Cir. 1969, 416 F.2d 882, 886; Foster v. United States, 2 Cir. 1964, 329 F.2d 717, 718. *See also* International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Zantop Air Transport Corp., 6 Cir. 1968, 394 F.2d 36, 40. Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility. We therefore must remand the case for retrial of plaintiff's claim for a deficiency judgment applying pre-Code standards.

*Defendant's Counterclaim for Depletion of Collateral*

 In his counterclaim defendant alleges various facts that, if true, show that plaintiff intentionally funneled the assets of National into Empire, which

---

7. Inasmuch as we find that the U.C.C. is inapplicable to the instant transaction, we find it unnecessary to pass on the correctness of the trial court's interpretation of the substantive provisions of the Code.

consequently caused the value of the National shares to diminish substantially. With this claim, plaintiff as stockholder would clearly have a right to sue *qua* stockholder for fraudulent mismanagement of National. It is, however, an established rule that if a plaintiff sues in a stockholder capacity for corporate mismanagement, he must bring the suit derivatively in the name of the corporation. Schaffer v. Universal Rundle Corp., 5 Cir. 1968, 397 F.2d 893. The reason for this rule is that each shareholder suffers relatively in proportion to the number of shares he owns and each will be made whole if the corporation obtains compensation or restitution from the wrongdoer. If each shareholder could sue individually for his losses, the wrongdoer would be subject to "as many suits . . . as there were stockholders in the corporation." Sutter v. General Petroleum Corp., 28 Cal.2d 525, 170 P.2d 898 (1946).

■ There exists, however, a well-recognized exception to this general rule. Where the act complained of creates not only a cause of action in favor of the corporation but also creates a cause of action in favor of the stockholder, *as an individual,* for violation of a duty owing directly to him, the stockholder may bring suit as an individual. Buschmann v. Professional Men's Ass'n, 7 Cir. 1969, 405 F.2d 659, 661–663; Sutter v. General Petroleum Corp., *supra*; Sacks v. American Fletcher Nat'l Bank & Trust Co., 279 N.E.2d 807 (Ind.Sup.Ct.1972); Stinnett v. Paramount-Famous-Lasky Corp., 37 S.W.2d 145, 149 (Tex.Com. App.1931). *See also* Dann v. Studebaker-Packard Corp., 6 Cir. 1961, 288 F.2d 201; Bookout v. Schine Chain Theatres, Inc., 2 Cir. 1958, 253 F.2d 292, 295; Erlich v. Glasner, 9 Cir. 1969, 418 F.2d 226; Kauffman v. Dreyfus Fund, Inc., 3 Cir. 1970, 434 F.2d 727; Fisher v. Pederson, 100 N.W.2d 156 (N.D.Sup.Ct. 1959); 13 Fletcher Cyc. Corp. § 5921, pp. 303–05. We have stated the exception to the general rule in Schaffer v. Universal Rundle Corp., *supra*, as follows:

> "The rule does not apply in a case where the stockholder shows a violation of duty owed directly to him. That exception to the general rule does not arise, however, merely because the acts complained of resulted in damage both to the corporation and to the stockholder, but is confined to cases where the wrong itself amounts to a breach of duty owed to the stockholder personally."

397 F.2d at 896.

■ Defendant here alleges that plaintiff's acts not only violated its fiduciary duty to National but further violated its duty as pledgee not to deplete the value of the collateral intentionally. As a general proposition, the law implies a duty in the pledgee of stock to preserve the value of any collateral held by him to secure a loan. Eden v. Miller, 2 Cir. 1930, 37 F.2d 8; State Trust & Savings Bank v. Dunn, 5 Cir. 1928, 24 F.2d 477, rev'd on other grounds, 278 U.S. 582, 49 S.Ct. 184, 73 L.Ed. 518 (1929); Reed v. Central National Bank, 10 Cir. 1970, 421 F.2d 113; Kono v. Roeth, 237 App.Div. 252, 260 N.Y.S. 662 (1932); Grace v. Sterling, Grace & Co., 30 A.D.2d 61, 289 N.Y.S.2d 632 (1968).

■ The fact that the pledgee of stock controls the company represented by the stock does not eliminate its duty not to deplete the collateral intentionally. The general rule was stated by Judge (later Chief Justice) Taft in Ritchie v. McMullen, 6 Cir. 1897, 79 F. 522, cert. denied, 168 U.S. 710, 18 S.Ct. 945, 42 L. Ed. 1212:

> The bailee owes a direct duty to the pledgor to be reasonably careful that no harm shall come through his custody to the subject-matter of the pledge . . . It is true that the obligations of the pledgee of stock to the pledgor would not be violated by the pledgee if the stock held in pledge suffered a loss in value through negligence of the pledgee in acting as director of the company or through ill-advised or negligent voting of other stock owned by him. The fact that

the pledgee of stock owns other stock in the same company, or is a director or officer therein, does not impose any greater duty upon him, in respect to the stock pledged, than if he had no relation to the company at all. But, if such pledgee use his position as director and his vote as stockholder intentionally to depreciate the stock of his pledgor held in pledge with the dishonest purpose of acquiring ownership of the stock at forced sale, this is a direct injury done by him to his pledgor, and he cannot avoid direct liability to his pledgor for it, by pleading that the means by which he accomplished this wrong and violated his duty as pledgee, involved an injury to the corporation, for which it may also recover damages.

79 F. at 533–534. *See* 12A Fletcher Cyc. Corp. § 5649, pp. 413–18.

 Here, the defendant seeks damages as a *pledgor*. The fact that his pledge is stock and that if the manipulated depreciation of the stock is proven would also give rise to a derivative suit by defendant as *stockholder* should not foreclose the suit as pledgor. The role of pledgor and stockholder are not identical and defendant may play the part he chooses; when the curtain drops, the facts will invite *finis*. We find that defendant has alleged facts that, if proven, would state a good cause of action for intentional depletion of the collateral and is entitled to bring his claim as individual pledgor.

Plaintiff next argues that regardless of the form in which the suit is brought, since defendant failed to institute the action within two years after he had notice of the alleged fraud, the suit is barred by the Texas statute of limitations for actions for debt not evidenced by a contract in writing. *See* Tex.Rev. Civ.Stat.Ann. art. 5526. We do not know if the trial court addressed itself to the limitations question when dismissing the counterclaim. Irrespective of whether the two or four year statute of limitations applies, however, facts will have to be brought out with respect to the time or times of the alleged corporate depredations by plaintiff. The trial court could not rule on the limitations question on the basis of the pleadings filed in this action. There are no facts conclusively established by pleadings or evidence that would definitely determine which statute of limitations applies and at what time the cause of action accrued.

The trial court's dismissal of defendant's counterclaim is therefore reversed and remanded for trial in accordance with the appropriate rules involving a pledgee's duty to preserve collateral. Inasmuch as no facts were put into evidence below on the counterclaim, we make no findings as to the factual merit of defendant's claim.

Reversed and remanded.