**In the Matter of B.J. THOMAS, INC., Debtor.**

**B.J. THOMAS, INC., Plaintiff,**

v.

**AMERICAN CYANAMID COMPANY, Defendant.**

Bankruptcy No. 81–331.
Adv. No. 81–234.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 19, 1983.

Stichter & Riedel, P.A., Tampa, Fla., for debtor.

Robert B. Glenn, Jr. of Holland & Knight, Tampa, Fla., R. Thomas Farrar, Miami, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the immediate matter under consideration is an action for damages filed by the Debtor, B.J. Thomas, Inc., against American Cyanamid Company (Cyanamid). The Debtor initiated this adversary proceeding upon filing a Complaint for Damages set forth in four separate counts. All four counts of the Debtor's complaint are based on the alleged existence and termination of an oral contract. The Debtor seeks damages for termination of the alleged contract in Count I, damages for wrongful termination in Count II, damages for premature termination in Count III, and damages for failure to give reasonable notice in Count IV. A final evidentiary hearing was conducted by this Court for the sole purpose of determining the existence of liability, with the understanding that another evidentiary hearing would be scheduled on the issue of damages upon a finding of liability on the part of Cyanamid.

The matter before the Court clearly represents a "related proceeding" as defined by subclause (d)(3)(A) of the Emergency Rule and, therefore, pursuant to subclause (d)(3)(B), the Bankruptcy Judge may not enter a judgment or dispositive order absent consent of the parties. The parties to this proceeding did not consent to the entry of a judgment by this Court, therefore, findings of fact, conclusions of law and a proposed judgment shall be submitted to the District Judge as provided by Emergency Rule (d)(3)(B).

The Court heard argument of counsel, received testimony of witnesses and documentary evidence, considered the record and finds as follows:

Cyanamid is in the business of phosphate mining in central Florida. In the operation of its business, Cyanamid is involved in substantial earth moving, dam and settling pond construction, land reclamation and road building. The major earth moving

operations, i.e. dam construction, are accomplished through the use of rented labor and equipment.

Prior to 1978, the Debtor performed clearing and cleaning services for Cyanamid, but was not engaged in earth moving operations. In August 1978, Cyanamid's purchasing agent, J.C. Stewart, approached B.J. Thomas, the president of the Debtor and inquired as to whether Thomas had any interest in providing earth moving services. Although Cyanamid had engaged the earth moving services of C. Wilson for the past twenty-five years, the Cyanamid field personnel sought to hire another contractor who would provide upgraded equipment.

Thomas expressed an interest in expanding his operations, although admitting that he had no experience in earth moving, and sought assurances that if he made the investment necessary to acquire the appropriate equipment, there would be sufficient, continuing work. Steward assured him that there was ample work for at least five years. Shortly thereafter, Thomas leased the equipment specified by Cyanamid and immediately commenced the delivery of earth moving services.

During the next two years, both Thomas and Wilson were retained by Cyanamid to complete different projects. It appears that the major difference between the two contractors stemmed from the type of equipment each employed in the performance of his duties. Wilson used and continues to operate with a "621" pushloader, a piece of equipment which must be loaded with a bulldozer. Thomas, on the other hand, leased the "623" self loaders (which operate without additional equipment), because they were preferred by the Cyanamid field personnel and the Cyanamid projects given to Thomas specified the use of "623" self loaders.

Under apparent pressure by the lessor of the earth moving equipment, the Debtor purchased the equipment which he had previously leased, however, before purchasing the equipment, Thomas again requested assurance of continued work with Cyanamid. Once again, Thomas was told that the work would continue for years and they (the field engineers and field supervisor) saw no reason why the Debtor would not be assigned the work in light of its past performance. It appears that the work which had been performed by the Debtor was very satisfactory.

In March 1980, Cyanamid replaced its chief executive officer with Robert Leitzman, whose responsibilities included the reduction of overall cost overruns on Cyanamid projects. In time, Leitzman ultimately concluded, as a result of his own independent inquiry, that the "623" self-loaders are not more efficient than the "621" pushloaders and, therefore, the additional expense for the "623's" used by the Debtor could not be justified from an economic point of view.

In mid-February 1981, Leitzman instructed his deputy plant manager that the Wilson equipment rather than the Debtor's equipment should be used on the new DL dam project, a project which Leitzman felt would substantially overrun its budget. For whatever reason, Leitzman's instructions to discharge the debtor were not, at that time, communicated to Thomas.

On Friday, February 20, 1981, Thomas concluded his work at the previous work site (The EL dam site) and was instructed by Stewart to relocate at the DL Dam site, to commence work on Monday, February 23. Upon learning that Thomas was working at the DL dam site, Leitzman, who had not approved his employment, ordered that Thomas stop work and Wilson commence in his stead. Thomas was informed of the termination on Wednesday, February 25, and directed to stop all operations by Friday, February 27. Although Thomas offered to reduce his rates in an attempt to stay on the job and avoid filing bankruptcy, Leitzman maintained his earlier position and substituted Wilson at the DL dam site.

Considerable testimony was introduced by the Debtor to establish that Leitzman's decision to terminate the Debtor was unwise and unwarranted. However, the Court is of the opinion that the decision by

Leitzman represents a "business judgment" and as such is irrelevant to the resolution of this controversy. *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir.1957); *see also, Empire Life Insurance Co. v. Valdak Corp.*, 468 F.2d 330 (5th Cir.1972); *Erlich v. Glasner*, 418 F.2d 226 (9th Cir.1969).

The Debtor contends that there was a contractual relationship between the parties, the essential terms of which required the Debtor to perform earth moving services for Cyanamid in a commercially reasonable manner and required Cyanamid to pay the Debtor an agreed amount for services rendered. The Debtor further contends that the contractual relationship arose from an oral agreement between B.J. Thomas and J.C. Stewart, Cyanamid's purchasing agent in August, 1978. It is without dispute that a written agreement was never executed and terms of duration and termination were never established. Thus, the Debtor contends that the alleged contract must be construed to be a contract of indefinite duration, and under Florida law, a contract terminable at will upon giving reasonable notice.

It is the primary contention of Cyanamid that there simply existed no enforceable oral contract and at best, the Debtor and Cyanamid developed a working relationship over a period of years which was terminable at the will of either party.

The Debtor has the burden of establishing the existence of an oral contract by more than a preponderance of the evidence. *Tipton v. Woodbury*, 616 F.2d 170, 176 (5th Cir.1980), citing *Sultan v. Trade Winds Construction Corp.*, 277 So.2d 574, 576 (Fla. 3d DCA 1973) *cf. Transammonia Export Corp. v. Conserv. Inc.*, 554 F.2d 719 (5th Cir.1977). It is the opinion of this Court that the Debtor has failed to carry its burden for the following reasons:

Although the Debtor relies upon the existence of an oral contract indefinite in duration, the Debtor has failed to establish any mutuality of obligation between the parties. While the testimony supports a finding that Cyanamid expected to conduct mining operations which would require earth moving services for at least five years, there was never a direct representation on the part of any Cyanamid employee that the Debtor was guaranteed employment. At most, Thomas was assured that Cyanamid had plenty of work and there was no reason to believe that the Debtor would not be contracted for some of Cyanamid's earth moving requirements. Certainly, these statements fail to rise to the level of a promise of future employment. In this connection it should be pointed out that there is no evidence to support the position that the Debtor promised to perform services for Cyanamid in the future. In fact, it appears that the parties, though engaging in a business relationship, were free to discontinue that relationship at any time. In this vein, it should be recognized that "[w]here the term of employment is discretionary with either party or indefinite, then either party may terminate it at any time and no action may be maintained for breach of the employment contract." *DeMarco v. Publix Super Markets, Inc.*, 384 So.2d 1253 (Fla.1980) (citing *DeMarco v. Publix Super Markets, Inc.*, 360 So.2d 134 at 136) (Fla. 3d DCA 1978).

The actions of Thomas during the course of the business association between Cyanamid and the Debtor further belie the existence of any binding oral agreement. More than once, Thomas sought assurances of the continued need of his services by Cyanamid. Clearly, had Thomas believed that he had entered into a binding contract which guaranteed employment if he continued to perform satisfactorily and maintained his equipment to Cyanamid specifications, he would have been unlikely to seek advice as to the probability of his continued employment.

It should be pointed out that all services whether provided by the Debtor or another contractor were supplied pursuant to written purchase orders which were generated by the purchasing department after a requisition, specifying services to be performed or equipment to be leased, was approved by a company official. Both individual purchase orders and "blanket" purchase orders

were issued. In regard to the "blanket" purchase order, which was given annually to certain regular contractors, the language on the purchase order stated,

> "Furnish rental equipment with operator and necessary labor *as requested* by proper maintenance and production supervisor during the year 1981." (emphasis supplied)

Implicit in the statement is the fact that Cyanamid was not bound by the "blanket order" to engage the contractor, although in practice it usually did.

The language on the back of the purchase orders further supports a finding of short term or "job by job" agreements as opposed to a long-term oral contract.

> "This document contains all terms of the Parties' Agreement concerning the materials or services described on the face hereof. It may not be added to, modified or superseded except by a written instrument signed by an authorized representative of Buyer. Different or additional terms are hereby objected to and no subsequent conduct by Buyer shall be deemed to be an acceptance thereof."

Because the Court, for reasons stated earlier, is satisfied that no enforceable oral agreement existed, it is unnecessary to engage in a discussion of integration clauses and parole evidence. Rather, it is sufficient to note that Cyanamid's use of the work orders and the language contained therein provide further evidence that the Debtor is unable to prove the existence of an oral long-term contract.

Finally, the Debtor is unable to recover on a theory of promissory estoppel and detrimental reliance. There is no showing that the Debtor relied to his detriment on any promises or positive representations by the Defendant. Again, the Debtor purchased the equipment used in his operation upon pressure exerted by the lessor and upon representations by agents of Cyanamid that they knew of no reason why the Debtor would not continue to be engaged by Cyanamid.

In light of the foregoing, this Court can only conclude that the Debtor was engaged by Cyanamid on a job by job basis, and at the time of his discharge, he had been performing services which were unauthorized for a period of two days. Therefore, the two day notice of termination afforded by Cyanamid, under the circumstances, was reasonable.

A proposed final judgment along with the Findings of Fact, Conclusions of Law and Memorandum Opinion shall be transmitted to the United States District Court in accordance with Emergency Model Rule (d)(3)(B).